KELLY et al. v. FORTY-SECOND ST., M. & ST. N. RY. CO.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. APPEAL—HARMLESS ERROR.

Where the uncontradicted evidence in an action on coupons issued by defendant showed that plaintiff had become the owner of them after they had been wrongfully delivered to defendant's president, without consideration, and canceled, it was not error of which defendant could complain to direct a verdict for plaintiff for less than the total amount thereof and interest, in the absence of evidence of payment.

2. EVIDENCE—RES GESTAE.

Where the issue was whether coupons issued by a corporation, alleged to have been wrongfully delivered to its president, without consideration, and canceled, had been paid, declarations made at the time of such delivery were admissible as part of the res gestæ for the purpose of showing nonpayment.

3. SAME—PRESUMPTIONS.

Evidence that coupons in defendant's possession were delivered to its president for cancellation, without consideration, on his demand, by one who held them as trustee for the owner, is sufficient to rebut the presumption as to their payment arising from such possession.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Richard B. Kelly and another, executors, etc., of Richard Kelly, deceased, against the Forty-Second Street, Manhattanville & St. Nicholas Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Herbert R. Limberger, for appellant.

John M. Scribner, for respondents.

INGRAHAM, J. When this action was before this court on a former appeal (55 N. Y. Supp. 1096), we held: That "upon the satisfaction of the judgment obtained by Shafer against Kelly, Kelly was entitled to maintain an action against a person legally liable to pay the coupons, as though Shafer had, by a formal instrument in writing, assigned them, or the right of action thereon, to Kelly." That the "title to the coupons, or the right of action to enforce payment thereof, being thus vested in Kelly by the entry of the judgment against him in favor of Shafer, and its satisfaction by Kelly, he (Kelly) was entitled to maintain this action against the defendant for the coupons; and, unless the defendant had shown some defense against the demand for the payment thereof, Kelly was entitled to recover." That, "the coupons being in possession of the defendant, they would be presumed to have been paid. That presumption was

rebutted by the evidence offered on behalf of the plaintiffs, by which it appeared that the defendant had not paid the coupons; and Kelly, being the owner of them, was entitled to collect from the defendant the amount thereof, possession of which it had obtained without payment." And that there was "no presumption that the company received them under any agreement which would prevent Kelly from collecting them. If any defense to the right to recover on these coupons existed, the burden was upon the defendant to allege and prove it." The evidence upon this trial was not materially different, so far as the plaintiffs' right to recover is concerned, except that the evidence that the coupons were not paid by defendant was materially strengthened; and, under our former decision, we think the plaintiffs were entitled to recover, unless the defendant has proved some defense to the demand for the payment of the coupons.

It appeared that receipts or certificates for 250 bonds, with coupons attached, were delivered to the officers of the defendant company who had deposited these bonds with Kelly on or prior to June 9, 1880. One of these receipts called for the delivery of 6 bonds, and another receipt called for the delivery of 2 bonds, to one Shafer, making all together 8 bonds which Shafer was entitled to receive on January 1, 1881. These 8 bonds remained in Kelly's hands until April 7, 1885, when they were delivered by Kelly to Shafer. The coupons maturing on these bonds prior to September 1, 1885, had been cut off, and were not delivered to Shafer with the bonds. Conover, to whom these receipts or certificates had been delivered by Kelly, was vice president of the defendant; and about June 9, 1880, Conover delivered these two receipts or certificates to Shafer. As before stated, Kelly continued in the possession of the bonds down to April 7, 1885, when, upon the demand of Shafer, he delivered the bonds, with all coupons subsequently payable. Shafer protested against Kelly's refusal to deliver the prior coupons with the bonds, and subsequently sued Kelly for converting these coupons, in which action he recovered against Kelly. It further appeared that, while these bonds were in the possession of Kelly, Conover, who had become president of the road, demanded that Kelly should cut off these coupons maturing prior to the year 1885; claiming that they belonged to the defendant, and that he, as president of the defendant, was entitled to them. In pursuance of this demand of the president of the defendant, Kelly cut off the coupons due prior to April, 1885, and delivered them to Conover. This was just before the bonds were delivered to Shafer. Conover took the coupons delivered to him as president of the defendant, and delivered them to the company, and they were canceled and pasted in a book. At the time the coupons were cut off the bonds and delivered to Conover, no payment was made by Conover or the defendant company to Kelly. This testimony is uncontradicted; and the surviving officers of the defendant who were in office at the time of the transaction, and who were called as witnesses, all testified that, so far as they knew, nothing was ever paid by the company to Kelly or Shafer for these coupons. It thus appeared that Kelly, who held the coupons in trust for certain persons to whom the company had transferred certificates entitling such

persons to the bonds and coupons, delivered the coupons to Conover, as president of the defendant, who demanded them as the property of the defendant, without anything being paid for them, and the coupons were canceled by defendant. There was no evidence that the company had at any time paid anything for them to any one. There was other evidence tending to corroborate the fact that there was no such payment, and we think it was established by this testimony that the coupons were unpaid, and that the company parted with no consideration of any kind for them. Under the rule stated on the former appeal, this entitled the plaintiffs to a verdict for the amount of the coupons; and as the amount of the verdict was less than the total amount of the coupons and interest, and as the plaintiffs were entitled to a verdict for the amount of the coupons and interest, it follows that it was not error of which the defendant could complain to direct the verdict which was directed.

There were questions arising upon the rulings admitting or rejecting testimony argued, but we think none of them require discussion. The declarations at the time of the delivery of the coupons by Kelly to Conover were clearly admissible as part of the res gestæ; and it was proved that the coupons were delivered to Conover, as president of the company, upon his demand, as belonging to the company, and without the payment of any consideration at the time of the delivery. This of itself is sufficient to rebut any presumption as to payment which would arise from the possession of the coupons by the company.

We have examined the other objections to evidence taken by the defendant, but find that none of them are material, or such as would require a reversal of the judgment. We think, therefore, that the direction of the verdict was right, and that, as no error was committed, the judgment should be affirmed, with costs. All concur, except PATTERSON, J., who dissents.